United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, ladies and gentlemen, Judge Clifton, Judges Clifton, Bress and I welcome you to the Ninth Circuit. Just a few housekeeping things before we start. I'll call the cases on the calendar in the order that they're listed. If you're here for oral argument, you have a time designation by your cases. And that if you're the appellant, that includes your total time, including any time you wish to reserve for rebuttal. It's your responsibility to keep track of your time. However, the clock counts down and then it goes up. So it doesn't mean I gave you extra time. It means you've moved into overtime and I may call you on that. But if you come, when you come to the podium, if you're the appellant and you aspirationally tell me how much time you would like to save, I'll try to let you know when you reach that point. As far as that goes to my colleagues, if you, when your time is over and the court is asking you questions, please continue to answer the questions, difficult as they may be. You can't call time on that. The time is ours as well. And we want to, we're going to be deciding your case. So we want to have our questions answered. So as long as the court's asking you questions, you're free to continue to answer. The first case on calendar is United States of America versus Margo Cruz. That case was, that's 2010114 was submitted on the briefs is submitted as of this date. Next is United States of America versus Joseph Min McReynolds, 20-10115, 20-10125. That was submitted on the briefs and will be submitted as of this date. The first matter on for oral argument is United States of America versus Frederick Ronald Pratt, 20-10328. Each side has 20 minutes total. And my preference is also to, I can see both of you and hopefully you can hear us well, but let us know if there's any problems. And I like to see what, even when you're not talking to the other side is talking, I'd like to see everyone on the video. Thank you. We're ready to proceed with the appellant. Thank you. Good morning. May it please. My name is Ryan Moore. I represent the appellant, Mr. Pratt. I'll reserve four minutes and I'll watch my own clock. I'll address this morning. First, the jury instruction claim, and then the preserved sentencing claim about the use and aggravation at sentencing and pictures that were found on Pratt's computer of someone he lived with. And then I'll address the guidelines related claim and the effect of the commentary. All right. As you proceed, please make sure, and there's a number of things in your contentions that we're not objected to at the trial level. So please let us know why we should address them or not, why they are plain error. The jury instruction claim is a plain error claim. The problem with the jury instruction is that the statute requires access of the repository or the material that contains the illegal files. Here in count three charges, the Dell laptop, but the jury instruction did not require the jury to find access of the repository or the material that contained the illegal files. The instruction was jointly proposed, but under this court's case law, Paris, no waiver occurs under those circumstances, unless there's clear unambiguous record evidence that he both knew of the claim and gave it up for some tactical or strategic or other reason. There's, there's no evidence. Let me pause on that because I don't know that it's quite so clear. It's one thing not to object when the other side, or even the court proposes something, it's something else again, to join affirmatively into something, which the court's probably not going to think very hard about. That's almost like invited air. And so why, why is it we shouldn't treat that claim, not simply subject to plain air, but actually waived. Just my recollection from the original Paris case for 97 was that that was an instruction that the defendant himself had proposed, and there was no waiver in that case. The waiver requires knowing of the claim of the error. And there's no indication here that Pratt or his lawyer knew that this is the instruction should have required knowledge of the repository. Well, that's why we have lawyers. That's why the lawyers get together and present and represent each side, each side, and then come forward. I mean, it, it just seems that when you say, hey, Your Honor, this is what we want. This is what we've agreed on. And I don't think the lawyers, I mean, this is a serious case. So I'm sure it wasn't the lawyer's first trial, as far as that that, that it's, it's unfair to not hold you to what you presented to the court. Well, I can understand a district court's frustration. Were you the lawyer at trial as well? No, I went to our office after trial. Well, because a lot of the things here, the lawyer at trial that's on the ground representing the defendant and actually got a pretty good result for the defendant, got an acquittal on quite a few things, didn't object to things. And now we're presented with, you know, opuses on things that were not objected to by the defendant's lawyer. Judge, it's just not the law in this circuit that any time the defendant presents a jury instruction that's wrong, she's waived the issue. Even if the court finds that somehow he knew about this particular claim, and was, there's no indication that he would have given it up for some strategic reason, that he would have allowed the jury to convict on a much broader theory than that which was charged in the indictment. Well, so at best, then we have plain error, right? Yes. I guess I still struggle to see even if we can get beyond the consent to the jury instruction where the error was plain. The plainness of the error is in omitting the statute's element. It takes just a reading of the statute to see where it requires and it requires access of the repository, not of the illegal files. And that is, that's clear based on the text, based on the surrounding provisions in another subsection that makes a distinction between the repository and the illegal files themselves. And it's also, other circuits have held it's clear, the government doesn't even offer an alternative reading of this statute. It appears to agree in its briefing with all the cases in law that I've cited as to why this element is required and was missing. And then the court issued the Lacey decision many years ago on a very similar, very related statute that in no uncertain terms required the jury instruction in a case under similar statute, a very similar statute to require access of the material. And that's, that's Lacey that was under 2252. Our case is under 2252, big A, but the statutes are... Can I just ask a broader question? For all the assignments of errors, which ones were preserved below? There's, there's no dispute that the sentencing error concerning the district court's use and pictures of the girl probably that that was a preserved error. Government doesn't dispute... I'll come back to that. I'm not sure that's correct, but I just want to know, can you just keep listing them? So we'll come back to that one. So that's one that you contend was preserved. Any others? Well, there's another error that the government hasn't asked for a plain error review of, and that is a guidelines error on a plus two enhancement for distribution. But, you know, I are on plain error. You know, I've been up front with that in our briefs and trying to meet the plain error standard on each of these. Just because they are on plain error doesn't mean that... Well, on the verdict form, Mr. Pratt stipulated that the images shown to the jury involve children under the age of 12. And that was obviously a strategic decision, so other things wouldn't come in. Doesn't that undercut the argument that the jury may have answered yes on the verdict form due to uncharged conduct? No, because whether or not he stipulated to part of what the jury had to find there, just one part, and the jury had to find a number of other things, it doesn't pertain in any way to whether or not the jury was confused about who had the burden of proof, about where it could look which drive, which device, as the source of the files that it was answering yes or no to. Well, I guess the other thing is too, you know, a lot of times we don't have the argument in the record, but I don't see any indication here that this case was argued on uncharged conduct. No, I mean, that would go to whether they were likely confused. If, you know, here the attorneys are handling it in a certain way, they're making their proffering agreed upon certain instructions, they have a verdict that they've agreed upon, and they argue the case in a certain way. And I don't see anything in here that indicates that the case was argued to the jury on the uncharged conduct that now that you claim is some possibility that they could have based their verdict on. The problem with the way the case was indicted and argued to the case is that the government didn't have a clear theory for the knowing access count. It never argued clearly that the jury had to find knowing access of the Dell laptop, which had charged in count three, knowing that the Dell laptop contained these illegal files. It argued in closing in the first two pages alone, several times. The theory was he shared it and he accessed child pornography. There was never any focus by the government of focusing the jury on the Dell laptop. And how else is it going to be accessed? Well, at trial, there was quite a bit of evidence and emphasis that child pornography existed on other drives on other repositories that weren't charged. You take the CD drive. I can hold it in my hand. I can't access it that way. You need the terminal, a computer, a monitor to actually see anything. And that appears to point directly to the laptop. There was the strong forensic evidence was that the only strong, you know, the jury was confused about the evidence in the case and asking for exhibit lists. And if you're a jury that's confused, you're going to go back to the strong forensic evidence in the case, which was that access the files on the uncharged F drive, a different drive, not charged, which the agent distinguished from the C drive on the laptop actually contained images that were legal that had been opened and clicked on. There was no similar evidence. They had been opened and clicked on, but through the use of the laptop. But yes, but the statute requires access of the disk, knowing that it contains these illegal files. The disk that contained them was on F, not on the C drive and the agent can't get to it directly on F. I have trouble understanding the practical problem here. If you can't access the holding the C gate drive and looking at it, then where else, how else could he have accessed the files that have been opened? The crime isn't accessing child pornography. That's the whole problem with this case. No, you're not. You're not responding to my question. Why can't you infer from the fact that you can't look at them on the C gate drive and have to use another device? That seems to me to permit the inference, the other device that was used was the laptop. The reason is there's no evidence in this record that when someone uses the laptop to access files on an attached drive, that the files are then moved to the laptop. So that they have to be moved to the laptop. You're accessing them through the laptop. And well, and assuming that they are, even though it's not in the record, and I don't think that's noticeable, there's no evidence that Pratt knew that that's how computers work. It doesn't matter whether he knows it or not. He is using the laptop. And I don't, if you can't give me another way, he could have gotten access to the files. There is evidence the files were accessed. Hard for me to explain why it's plain error for the jury to infer that he must have used the laptop to do it. My response, and I do want to go to the sense and claim that I think is preserved here, is that the statute is more focused and specific. It doesn't merely allow a conviction for access using the laptop of files located wherever else they might be located. You listen to the statute, but I don't understand the difference. I mean, if he used the laptop for it, why doesn't that satisfy the requirement of the statute? The jury would have to find, because the jury would have to find that he accessed the laptop knowing it, the laptop, contained the illegal files, it's disk. And so the jury could have convicted for accessing on the other. You can go on to the sentencing for my purposes. Yeah, so just mentioned that there's a question about whether or not this argument is for sure. Now, this is the argument that the district court clearly errored, made a clearly erroneous factual finding in finding that these particular pictures of the second cousin had been found in relation to his IP address. And then on the basis of that statement, implicitly he found that he knew about these pictures and that he possessed them because it mentioned those pictures twice in aggravation in its brief explanation for the sentence. The statement that it was found in relation to his IP address was either a misstatement or misapprehension. It's just not accurate. There's no evidence to support that. And the government hasn't even that those pictures were found in relation to the IP address. And so, and I'm getting to the preservation as the pictures found on the laptop. Yes. Why isn't that enough evidence for the district court to conclude by a preponderance that he had access to them? Well, first, the district court might not conclude that if it without the erroneous factual finding, but it's not enough evidence because to me, it's a pretty obvious inference that almost anybody would draw. Well, it's a, he can't be responsible for everything on that computer because it is a shared library. And there was a lot of evidence about how much sharing there was. It was principally his. I come back to the same point. It seems to me a pretty obvious inference. Well, and I guess I'm going to tag on to that argument that it being an obvious inference, but if the things that you're saying, those are perfect things to say at trial, and he could have been acquitted of that, but the jury didn't acquit him of that. And then the judge, when the judge goes into sentencing, it's a different standard and it's by the preponderance and the judge can look at all of this other evidence. So I don't, I think you're making arguments like you're arguing to the jury why he's not guilty of that count. And they did find him guilty of a count. And then at sentencing, the sentencing can be broader and can even consider evidence that was presented where he may not have been convicted. Let me just clarify. This is based on the images that were the subject of his conviction, but the pictures of the girl that he lived with were not introduced to trial. They were not a part of the government's investigation of any sharing. They were completely distinct and just found on the drive and they only come out at sentencing. So we're not arguing about pictures that were the subject of the conviction. We're not saying the district court could have enhanced him based on those images. I want to use a little bit of your time for all the challenges to the conditions, his conditions that you're challenging now. And I believe, I don't believe any of those were challenged at the time of sentencing. And just, I kind of want to put forth my bias in at a lot of times when you announce conditions of probation, people will say things like, well, your honor, what if X, Y, and Z happens? Will that be covered by this, this, that condition of probation? And it will be discussed and say, well, no, that, that won't, or, you know, it doesn't mean it. So it seems to me that all the, the objections that were not raised at the time, or the conversations that could have been had are now being had with this court. And they're speculating on ways that somehow how the condition can be too broad, or if, if he just happens to go to Starbucks and then there's a child in there, I think they could have easily discussed that. And I think everyone pretty much agrees that if a child and a mother walk into Starbucks, while he's at Starbucks, that doesn't violate that particular condition. And also the defendant, you know, would be in a position if he feels that he's being unreasonably requested to do something or to not do something, he can put it on calendar and come and have that clarification. But they're all sitting there. They don't have any of those discussions. There's no, there's, there's no objection. And now everything that we're talking about is speculation about what could happen that might be covered, which clearly would seem to me, no one anticipates that it would be. So I have a problem. I have a problem with objecting to conditions of probation, when you're sitting there listening to them. And if you, and you have a lawyer, why you're not talking about them. I understand the court's frustration with, you know, claims on plein air in general. And I, it doesn't mean that no plein air could. In particular, the condition, the most important one for Mr. Pratt is the lifetime internet ban. And you know, that's the only one that I would highlight this morning, but the most important one is what, which condition? Special condition 12. Well, lifetime ban on using the internet. And it is overbought for two reasons, because it includes devices that can access the internet, but they'd have no ability to access anything related to his risks. And as because it includes content websites that have no relation to his risks, using maps, doing online banking, finding jobs, applying for jobs. And so the district court should be in these cases, this court has affirmed lifetime internet bans, but it hasn't grappled with the Supreme Court's decision in Packingham, which said that now, today, internet use is a fundamental right, that people have a fundamental right to access it. So the district court could limit or tailor these conditions to certain devices that can. And defense counsel could also offer something that might be, that might cover some of those situations, but cannot. But everyone sat there like a potted plant. My law clerks pointed out to me that I remanded a condition like this previously in a case to have more clarification. So that I don't know that that's stare decisis on me, but apparently I've remanded something on that, but you're never going to get perfect clarification in terms of all of that. But do you want to save a little time for your rebuttal? You basically have no time, but I'll give it to you. I do want to address Judge Bress's preservation question, but I'll stop now. Unless I'll come back to it. All right. I'll give you two minutes on rebuttal. So thank you. Thank you. Good morning, your honors. Terry Chris for the government. May it please the court. The, I'll begin with the first issue. And there, I agree with the court that we have a situation involving waiver here. It's true that Perez treats waiver and invited error is requiring some indication that the defendant knew about the issue. But then we also have United States versus Kane, which cites the Perez and suggests that a jointly proposed instruction can be waived. And I think the way Kane deals with Perez is Perez involved a. It can be. Perez emphasizes the need for a sign that the defendant or his counsel understood what they were doing. And that was an instruction as pointed out that was proposed by defendant. A joint instruction is not going to be stronger with the defendant's fingerprints on it. So why is it in this case? What indication is there that there was a knowing waiver? Your honor, Kane addressed that exact point. And the point Kane made was that in Perez, it was a model instruction. So the simple fact that the defendant might agree to a model instruction might not signal that he really thought about the issue with Kane. It wasn't. It was a, an instruction that he and the government put together. And I think that we can't consider the defendant's counsel signature insignificant with a proposed instruction. And that's true here, too, by proposing the instruction and the jury form at issue with the arguments one and two. In this case, the defendant must have thought about whether they were appropriate. Otherwise, he wouldn't have proposed them. And I think that's enough to get through the invited error waivered standard here. Even if it weren't, though, we're still under plain error because there wasn't an objection on either of those issues. And there wasn't plain error in this case with the first issue. Chris, I think for my part, I think Fred has a question. I think I understand this argument, but I did want to get your perspective on the two level sentencing enhancement for knowingly engaging in the distribution of child pornography. Just to start on that, what is the standard of review on that? Ordinarily, the standard of review would be abuse of discretion for the ultimate conclusion, with clear error for factual findings. The interesting thing here is it depends on what the defendant's argument actually is. There were objections to both elements of that argument regarding the application of the distribution enhancement and the use of the bathtub pictures. But it seems like that's not quite what the defendant is arguing now in the reply brief in an oral argument. And if the defendant really is... Was this preserved or not here? Based on what the defense counsel is arguing now, no, I don't think it's preserved. I think it's plain error. If he was carrying on the objection he made at trial, which was more of a hearsay objection, that would have been preserved. Well, what objection on the two level enhancement, what objection was made to that below, if any? I think he objected to the fact that it was an acquittal on count three, the distribution counts, which I think were one and four. And so to the extent that's what he's arguing now, that would be preserved. But if he's just arguing that it was wrong, well, then that would be plain error because the court, the factual findings at least would be reviewable for clear error and then ultimate conclusion would be plain error. And it just wasn't wrong. There was more than enough evidence to support the district court's finding that it was the defendant who was engaged in the distribution and that he had a knowledge mens rea. And the trial evidence really bears it. I think the distribution part is understood. I think he's really focusing knowingly. I take his argument to be, I had this software on my computer. I downloaded it. I didn't appreciate that it allowed my files to be shared with the outside world. And so how do you respond? There was ample evidence at trial to establish the knowing mens rea. Even under the abuse of discretion standard, we would sort of view that factual finding for clear error and all the district court had to do was find it by a preponderance of the evidence because it was a sentencing factor. What was the evidence of knowing? Obviously the jury acquitted him, that was beyond a reasonable doubt. But what was there that the district court could make a different inference? Well, I think first of all you had his familiarity with computers and we're not relying exclusively on that, but it is a relevant fact that he had apparently put together a computer before. He seemed knowledgeable about the programs, uTorrent and the BitTorrent network and his use of the dark web. And when you take that in conjunction with the fact that... Let me pause there. I'm not sure that putting together a computer speaks to this. It's the BitTorrent or uTorrent or whatever it was called. What evidence was there that he understood that by acquiring files through that application, he was also making files on his computer available to the public? The program he used, uTorrent, explicitly mentions share ratios and upload speeds. And a person who is familiar with computers would understand that those terms were referring to him uploading files to other people over the network. And that's where the computer familiarity comes in. Even if we wonder if a lay person would know those things, and I think a lay person probably would, somebody who is intimately familiar with computers would be likely to understand them. And that's at least enough to get you over the preponderance of the evidence threshold that the district court had to find. Well, isn't there something too that affects the speed that things download if you don't share? Well, that's also true is that uTorrent heavily incentivizes users to continue to upload files because if they don't, their own downloads get cut off. And that was a fact made known at trial. So again, someone familiar with computers and familiar with this program would know that they need to be uploading files if they wish to continue downloading files with any kind of speed. And I think, again, it's a circumstantial evidence issue, as mens rea usually is. You almost never have direct evidence of what's going on in someone's head at the time. You have to look at their actions and the circumstances and make a reasonable inference. And on the preponderance standard that the district court had, we have more than sufficient evidence. Well, so if I understand you, your position, the district court could have completely disbelieved the defendant that he didn't really know, understand computers, that he didn't read those things on the website, that he didn't understand how it was all operating. And if that was the case, then he would have known that they were sharing. He could have. Is that what you're saying? Yes. But it's kind of pivotal whether you believe the defendant understood computers or not. I think that is whether the person looking at it understands computers or not, the jury or the judge. Yes, your honor, I think that's right. I think the defendant, he came in and said he didn't understand, at least in his statement, agent said he didn't understand how these things work. But I think the evidence in this case belies that claim. And I do think the fact that you put together a computer is somewhat relevant because the sort of people who know how to put together computers also know how to use them. And that might be beyond what an ordinary person is able to do. And it's just another excuse me. I interrupted the press, so I want him to be able to ask his question. Go ahead. Well, you're going in the constructed computer because the nature of this construction of computer is it's there on the record. And I think the district will rely on it. Let's let's put it off to the side for a second. If you didn't have that, would this be sufficient? Yes, your honor, I still think the fact that he was knowledgeable about how the dark web worked and the BitTor network and the programs he used in conjunction with the fact that the program explicitly told him that he was sharing files and included things like the share ratio right there on the screen for him to see. And I think the court could disbelieve him when he says, oh, I never noticed the numbers that are on my screen the whole time I'm using the program. Again, this is the fact that he himself installed on his computer BitTorrent and these other peer-to-peer services that leads you to conclude that he should have known that was knowing distribution. Well, I don't know if the standard is he should have known this. The question is whether he had an actual knowledge mens rea. But I think we meet that standard because he did install the program. He knew how it worked. It explicitly told him what was happening and he was able to make changes to its setting. So it wasn't passive in this by any means. So if the court doesn't have any further questions about that issue, I'll move on to the jury instruction issue. And there, assuming we don't have a waiver, we still don't have plain error because the jury's finding that the defendant knowingly accessed child pornography on the Dell laptop is the functional equivalent to the finding that he knowingly accessed the Dell laptop containing child pornography. Condition 12. Opposing counsel, excuse me, focused on that. Can you address that one? Yes, your honor. So condition 12 was the prohibition of using the internet without the exceptions of the probation officer. And the main thing to keep in mind here is that we're under plain error. And I think a second important point here is the one that Nierke and Ochoa make in a slightly different context, which is that probation officers are often called upon to provide interpretation, guidance, and application in these situations. And this is not a total internet ban, full stop. It is a ban on internet connected devices without, but subject to the exceptions of the probation officer. So if it really were the case that there were an internet connected device that had no capability of displaying child pornography, that's exactly when you would get an exception from the probation officer. But I don't think this is overbroad or substantive. Do you agree that the condition of supervised release, one, do not bar Mr. Pratt from working in a job where he incidentally and momentarily meets children. Two, do not bar Mr. Pratt from asserting his fifth amendment rights against self-incrimination by refusing to answer questions. And three, do not bar Mr. Pratt from making minor adjustments to his living situations, i.e. rearranging furniture without notifying the probation officer. If so, should the conditions be modified to make these understandings explicit or are they just inherently explicit and no probation officer would ever try to violate someone for those? To take the first part of your question, Your Honor, I agree with all three of those interpretations of the conditions. Secondly, I don't think modification is necessary. I think either they're clear enough on their face or through application by the probation officer, they would undoubtedly be interpreted in that way. So I don't think there's any need to make any changes here because of that. Could number 12 be better? Number 12, I think part of the problem is the ability to anticipate what technology is going to look like. And I would say, to a point that defense counsel made about how there are websites that might not have any relation to downloading child pornography, that once you give someone internet access, it's really hard to cabin what they do on the internet. And the question here isn't what is the best instruction or the best condition that we can write. It's whether it's substantively and procedurally reasonable. And the district court apparently thought it's reasonably related to the goal of preventing recidivism to prevent the defendant from using the internet. This is obviously an internet crime and it's a particularly serious crime. And sometimes serious crimes and the need to prevent the recidivism of serious crimes will require greater restrictions on a defendant's liberty. And I think that's reasonable in light of the condition and the circumstances of this events. What about the adult porn? I mean, it could, I mean, he seems to want it to be more explicit. And I don't know in terms of the record, a lot of times I'm aware in these cases that probation officers feel if people are either addicted to adult porn or regularly accessing adult porn, it makes them difficult to deal with. Well, I don't think it's overbroad. I think this is exactly the situation that came up in Nearki and Ochoa that was approved as not being substantively unreasonable. And again, Ochoa makes the point that we have the probation officer to provide application and guidance in that situation. I think some of the parade of horribles that the defendant mentions about not being able to possess, say, his case file aren't really concerns because of the way that Nearki and Ochoa have interpreted the plain meaning of that condition to only refer to adult pornography and not to say PG-13 movies or his case file. And to the extent to which there's any ambiguity, that's exactly what the probation officer is there for as well. So no, I don't think we have a situation where we need to modify that condition. Do you think any of them need to be modified? What about the representation one? What's in the record about, because the court picked 3,000 times five, right? And the 3,000 mandatory minimum was the statute that came about between when the offenses occurred and when he was sent. Am I correct? Yes, Your Honor. So the record doesn't talk a lot about it. A lot of times they get affidavits from victims. And I'm guessing if we vacated that and required a hearing that actually the defendant could face significantly more restitution if you heard from all of the victims and the counseling and how, I mean, I've seen a lot of those affidavits where they say it affects them their whole lives and they have to be in counseling all the time. And every time they walk in a room, they wonder if someone's seen their image and they have all sorts of problems. That's certainly possible, Your Honor. The evidence here is that we actually do have victim affidavits and at least one of them is dated before 2018. There's a 2016 letter. Several of them are undated, so they could be that old as well. But the 2016 one specifically asked for $3,000, couldn't have known about the statutory change. And so it's much more likely that the district court relied on that affidavit instead of the mandatory minimum in the statute. And again, that's a plain error issue. So it's the defendant's burden. Is there any backup to explain the number of 3,000? No, there wasn't. Either by the court or the- I have difficulty saying that provides much evidence of injury or damage in that amount. I don't know this field, but I wouldn't be surprised if it turns out that was simply a popular number circulating and may explain why it wound up in the statute. But not much evidence to go on, is it? It's not a lot. I would note that the issue raised on appeal is that it was ex post facto. And so we don't have an ex post facto issue, at least. And again, it's just plain error. Well, it's not ex post facto because the judge decided that was the right number. Well, that shifts the spotlight to whether that's the right number. And there's nothing that I can see that supports that number. So I'm not sure that we can say, well, the defendant didn't argue that because it's your response that's shifting attention to that. And there's still no evidence supporting that number. The evidence to support the number is the victims requesting it. The victims are the ones who thought that that was an appropriate restitution for their harm. And I think the victims would be in the best position to know that. What you said, one victim requested that without any explanation. That wouldn't really speak to the other victims. It suggests that that's just the number that's working its way around. But is that enough just because somebody asked for something? Is that a basis for the court to conclude that's the appropriate sum for the injury suffered? It may not be sufficient, but it's certainly relevant. And again, on plain error review, it's the defendant's burden to show that we have a plain error that would be a violation of his substantial rights. And I think the fact that we have multiple victims who have requested that number, it's just that some of their letters are undated. So we don't know if they're before after the 2018 statutory amendment, but we do have more than one victim asking for the number. And so how does that support your argument? I mean, to me, it actually may cut the other direction. If everybody's asking for the same number, it suggests that the number is magic somehow, not that the number reflects the actual injury suffered by each of the individuals. Well, you might think that the injury suffered is going to be relatively the same, given that it's the same offense of accessing their child. That's the penalty attached, not what that individual actually had to pay for counseling or whatever else. I'll just say I'm not persuaded. I think there was also in the record, the court indicated that he knew that victims of these crimes suffered, that it was very damaging and suffered a lot. I think there was some that the court was of that belief. That was the other thing I saw. That's right. The court did talk about how the harm to the victim was the primary issue with these sorts of crimes, and the court was very concerned about that. And that supported giving restitution. And then when you take that on top of that, the specific number coming from the victim themself, I think that's enough to get through plain error review. You know, Mr. Chris, are these letters ones that have been filed by these victims in many other cases? I don't know the answer to that, Your Honor. I'm sorry. If the court has no further questions, we respectfully request that it affirm. Thank you. All right, you have two minutes. Let me ask you first on rebuttal, if you agree that if we send restitution back and get more explicit information from the victims and require the district court to go through more, do you agree that the remand is not limited to $15,000? Yes. So I mean, someone could come in and say, I need counseling for the rest of my life at $100 an hour and ask for significantly more money and the court could buy that. It could, it would need to meet its burden at the restitution hearing to satisfy that amount. But we think that we think the likelihood of that happening is low because... As long as you know you're rolling the dice when you ask for it. We did know, yes. I know you gave me time to answer Judge Bress's question, and I will do that. The question is, where was it preserved in the record, Judge, that the defendant objected to the district court's consideration of the bathtub pictures, the pictures of the girl he lived with? And that's at page 12 to 15 of the ERs, that's the sentencing transcript. And again, it's sentencing on page 26 of the ERs when those pictures come in. And that it's a multi-page objection, he's objecting to the district court considering them. First, because he wasn't convicted for those pictures, but that's not the part of the objection I'm relying on. He then objects that under due process grounds on page 14, he objects because the girl and her mother denied those claims that they had provided them. They also object because there were four layers of hearsay in those claims and on 14 also to general reliability of the evidence. How about on the issue on the two-level enhancement as to whether he knowingly distributed child pornography, was there an objection made on the mens rea item? There was no objection that focused the district court on whether the plus two should have applied. There was an objection to considering that acquitted condom. Okay, that's how the district court took that objection, the acquitted condom. All right, your time has expired, but I want to make sure neither of my colleagues have additional questions of you. All right, you've answered our questions. Thank you both for your helpful argument. This matter will stand submitted.
judges: CLIFTON, CALLAHAN, BRESS